IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARA KIMBROUGH,<br><br>    Plaintiff,<br><br>    v.<br><br>BUCKS COUNTY, et al.,<br><br>    Defendants. | CIVIL ACTION<br><br>NO. 24-4470-KSM |

<u>**MEMORANDUM**</u>

**Marston, J.**                                                                                                    February 3, 2025

      Protected speech should not be silenced.  Plaintiff Ara Kimbrough is a former employee of the Bucks County Correctional Facility's ("BCCF") Record and Reception ("R&R") Unit.  In 2023, BCCF was sued by the estate of an inmate who overdosed there.  The following year, Kimbrough, while off duty, called the lawyer who represented the inmate's estate.  He shared that he believed the R&R Unit's chronic understaffing and Bucks County's refusal to correct it led to the fatal overdose.  Once County officials learned of this phone call, they conducted an investigation and then fired Kimbrough.

      Kimbrough now sues Defendants Bucks County, Lauren Smith, Shae Randolph, and David Kratz for First Amendment retaliation under Section 1983 and for wrongful discharge under Pennsylvania law.  (Doc. No. 1.)  Defendants have moved to dismiss Kimbrough's federal claims because (1) Kimbrough's phone call with the lawyer was not protected speech under the First Amendment; (2) Defendants Smith, Randolph, and Kratz (the "Individual Defendants") are entitled to qualified immunity; and (3) Kimbrough has failed to make out a claim against Bucks County under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (Doc. No. 3.)

1

And, if his federal claims fall, Defendants argue, Kimbrough's state claims must go too. (*Id.*) The Court held oral argument on January 23, 2025. For the reasons set forth below, the Court grants in part and denies in part Defendants' motion to dismiss.

I. **Background**[1]

Bucks County hired Kimbrough as a BCCF correctional officer in 2008. (Doc. No. 1 at 6.) For the next decade, Kimbrough worked as a correctional officer until he was promoted to administrative lieutenant. (*Id.*) As part of his new role, he was responsible for overseeing the R&R Unit, which is where inmates are booked and where inmate records are stored. (*Id.*) Next to the R&R Unit, there are holding cells and spaces where inmates are searched. (*Id.*)

In 2022, a BCCF inmate named Joshua Patterson fatally overdosed. (*Id.*) On July 21, 2023, Attorney Brian Zeiger brought a wrongful death suit against Bucks County and others on behalf of Patterson's estate. (*Id.*) Like most other BCCF employees, Kimbrough knew about this wrongful death lawsuit because it was widely covered by local news outlets.[2] (*Id.* at 7.)

In May 2024, Kimbrough called Attorney Zeiger while off duty and without any direction from his superiors. (*Id.*) During the call, Kimbrough shared his personal knowledge of the events leading up to Patterson's death. (*Id.*) He explained that another inmate was able to sneak drugs into the jail and share them with Patterson because the R&R Unit was understaffed. (*Id.*) Specifically, he shared that a correctional officer was pulled off the R&R Unit, which allowed an inmate who had just been searched to return to his prior holding cell and retrieve drugs that he had smuggled into the jail. (*Id.*) The inmate then shared the drugs with Patterson who

---

[1] These allegations come from Plaintiff's Complaint. (Doc. No. 1.) The Court assumes their truth for purposes of this motion. *See Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

[2] At oral argument, defense counsel mentioned that preservation emails were sent to all employees in the R&R Unit in order to comply with the County's discovery obligations from the wrongful death suit. (January 23, 2025 Hr'g Draft Tr. at 10:7–16.)

subsequently overdosed and died. (*Id.*) He also told Attorney Zeiger that for almost two years before Patterson's overdose, he made several complaints about the R&R Unit's chronic understaffing. (*Id.*) Despite his numerous complaints, Bucks County took no steps to address the understaffing problem. (*Id.* at 6.) Based on this call, Attorney Zeiger filed a motion to reopen discovery, which was denied. (*Id.* at 8.)

On June 12, 2024, a deputy solicitor for the County interviewed Kimbrough about his phone call with Attorney Zeiger. (*Id.*) Kimbrough confirmed that he had called Attorney Zeiger in May 2024 to share how he believed the drugs were snuck into the prison and how he had previously made numerous complaints about the R&R Unit's understaffing. (*Id.*) A week later, David Kratz (Director of Department of Corrections for Bucks County) emailed Kimbrough a separation and general release agreement. (*Id.* at 5, 8.) The agreement provided that Bucks County would pay Kimbrough a lump sum if he voluntarily resigned. (*Id.* at 8.) Kimbrough refused to sign the agreement because he wanted to keep his job and believed he had done nothing wrong. (*Id.*) The next day, he was suspended without pay. (*Id.*)

While he was suspended, Kimbrough had a "fact-finding meeting" with Shae Randolph (Assistant County Solicitor) and Lauren Smith (Chief Human Resource Officer for Bucks County). (*Id.* at 5, 8.) During the meeting, Kimbrough told Randolph and Smith what he had told Attorney Zeiger. (*Id.* at 9.) Smith asked Kimbrough whether he understood that he had violated several Department of Corrections policies by sharing confidential information with Attorney Zeiger. (*Id.*) Kimbrough responded that he did not understand because he had not received any training about what kind of information is considered confidential under those

policies.  (*Id.*)  Plus, none of the policies defined or explained the terms "sensitive" or "confidential."[3]  (*Id.*)

In late July 2024, Kimbrough received a termination letter and disciplinary action form from Smith.  (*Id.*)  These two documents explained that Kimbrough was fired for "shar[ing] confidential information with plaintiff's counsel."  (Doc. No. 1-2 at 1.)  It then listed five policies that Kimbrough had allegedly violated.  (*Id.*)

Kimbrough now sues the Individual Defendants and Bucks County in a Four-Count Complaint.  (Doc. No. 1.)  Count One is a First Amendment retaliation claim against the Individual Defendants.  (*Id.* at 10–11.)  Count Two is a First Amendment retaliation claim against Bucks County.[4]  (*Id.* at 11–13.)  Count Three is a claim against Bucks County for wrongful discharge against public policy under Pennsylvania law.  (*Id.* at 13–15.)  Count Four is a parallel wrongful discharge claim against the Individual Defendants.  (*Id.* at 15–16.)  Defendants have moved to dismiss each Count under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 3.)

## II.  Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

---

[3] In his Complaint, Kimbrough alleges that Attorney Zeiger already knew how the overdose happened based on surveillance footage and other disclosures produced during discovery.  (Doc. No. 1 at 7.)  So, the only new information he revealed to Attorney Zeiger was that he made numerous complaints about understaffing in the R&R Unit for nearly two years leading up to the inmate's overdose.  (*Id.*)

[4] In his Complaint, Kimbrough claims that he was fired pursuant to five County policies that are unconstitutionally vague and overbroad because they fail to define the terms "confidential" and "sensitive."  (Doc. No. 1 at 12.)  Defendants do not address these claims or the constitutionality of these policies in their motion to dismiss, so the Court does not address them here.  Nevertheless, if Kimbrough truly intends to bring three separate claims against Bucks County for (1) First Amendment retaliation, (2) vagueness, and (3) overbreadth, he should bring each claim as a *separate* Count in his Amended Complaint.

U.S. 662, 678 (2009) (internal quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).  "However, an exception to the general rule is that a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (cleaned up).  The court may also "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011) (internal quotations omitted).

### III.   Discussion

Defendants have moved to dismiss Kimbrough's Complaint.  (Doc. No. 3.)  First, they argue that his First Amendment retaliation claim against the Individual Defendants fails because his call with Attorney Zeiger was not protected speech under the First Amendment.  (Doc. No. 3-4 at 9–12.)  Next, Defendants contend that Kimbrough's claims against the Individual Defendants are barred by qualified immunity.  (*Id.* at 12–13.)  Then, they assert that his First Amendment retaliation claim against Bucks County fails under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  (*Id.* at 13–14.)  Last, Defendants argue that Kimbrough's state law claims against both Bucks County and the Individual Defendants must be dismissed because this Court lacks subject matter jurisdiction over those claims if his federal claims are dismissed.  (*Id.* at 14–

15.) Or, in the alternative, they say he fails to make out an actionable common law claim for wrongful termination. (*Id.*) The Court addresses each argument in turn.

### A. Kimbrough States a Plausible First Amendment Retaliation Claim against the Individual Defendants

In Count One, Kimbrough sues the Individual Defendants under 42 U.S.C. § 1983 for First Amendment retaliation. (Doc. No. 1.) "To establish a First Amendment retaliation claim, a public employee must show that his speech is protected by the First Amendment and that the speech was a substantial or motivating factor in what is alleged to be the employer's retaliatory action." *Flora v. County of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015) (citing *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009)). "A public employee's speech is constitutionally protected when (1) the employee 'spoke as a citizen'; (2) the statement involved a 'matter of public concern'; and (3) the government employer lacked 'an adequate justification for treating the employee differently from any other member of the general public based on its needs as an employer.'" *Evangelista v. Hous. Auth. of Camden*, No. 1:20-CV-16824-KMW-EAP, 2024 WL 4553679, at *10 (D.N.J. Oct. 22, 2024) (quoting *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 753 (3d Cir. 2019)). The final element—the *Pickering* balancing test—involves the need for a "careful" balancing "between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Lane v. Franks*, 573 U.S. 228, 231 (2014) (cleaned up).

Here, Defendants do not dispute that Kimbrough's call with Attorney Zeiger was the reason he was fired. (Doc. No. 3-4 at 12.) They instead argue that his First Amendment retaliation claim fails because his speech was not constitutionally protected for three reasons. First, Defendants argue that Kimbrough was not speaking as a private citizen in his phone call

with Attorney Zeiger. (*Id.* at 9–10.) Second, Defendants assert that Kimbrough's speech is not protected because it was not public and did not otherwise provide any value to the public. (*Id.* at 10–11.) Third, Defendants argue that even if Kimbrough were speaking as a citizen on matters of public concern, his speech was not protected because it threatened the effective and efficient operations of BCCF. (*Id.* at 11–12.) Kimbrough counters that when he called Attorney Zeiger, he spoke as a citizen, about matters of public concern, and did not cause or threaten to cause any disruption to jail operations. (Doc. No. 4 at 8–13.) The Court addresses Defendants' arguments and Kimbrough's counterarguments below.

*1. Kimbrough spoke as a citizen to Attorney Zeiger.* Defendants first argue that Kimbrough did not speak as a citizen because "he conveyed information he knew . . . solely because of his role as a supervising correctional officer in the intake unit." (Doc. No. 3-4 at 9.) Yet the Third Circuit has already rejected this argument. *See Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 989 (3d Cir. 2014) (rejecting Appellants' contention that speech is not protected when it "owes its existence to a public employee's professional responsibilities"). Indeed, courts have *never* applied "this nearly all-inclusive standard" because it "would eviscerate citizen speech by public employees simply because they learned the information in the course of their employment, which is at odds with the delicate balancing and policy rationales underlying *Garcetti* [*v. Ceballos*, 547 U.S. 410 (2006)]."[5] *Id.* (internal quotations omitted).

Instead, to evaluate whether a public employee spoke as a citizen, courts must "make a practical inquiry and assess whether the speech at issue is itself ordinarily within the scope of an employee's duties." *De Ritis v. McGarrigle*, 861 F.3d 444, 454 (3d Cir. 2017) (internal

---

[5] The Court further notes that the Supreme Court has explained that "speech by public employees on subject matters related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment." *Lane v. Franks*, 573 U.S. 228, 240 (2014).

7

quotations omitted).  This issue is a mixed question of fact and law.  *See Flora*, 776 F.3d at 175.  "Specifically, the scope and content of a plaintiff's job responsibilities is a question of fact, but the ultimate constitutional significance of those facts is a question of law."  *Id.* (internal quotations omitted).

Under this proper inquiry, the Court finds that the factual allegations in the Complaint, taken as true and viewed in the light most favorable to Kimbrough, show that he spoke as a citizen when he called Attorney Zeiger.  For one, Kimbrough alleges that he spoke to Attorney Zeiger voluntarily, while off duty, and without any direction from any of his superiors.  (Doc. No. 1 at 7); *see Trent v. County of Somerset,* No. 22-2891, 2024 WL 4144403, at *2 (3d Cir. Sept. 11, 2024) (finding that a public employee spoke as a citizen when he spoke "outside the workplace during non-work hours" on matters that "had nothing to do with [his] job duties").  At this stage, there is no indication that Kimbrough's role as a supervising correctional officer "compelled or called for him to provide" information about Patterson's death to Attorney Zeiger.  *Dougherty*, 772 F.3d at 988.  Nor was this speech "part of his ordinary responsibilities—it was not part of the work he was paid to perform on an ordinary basis."  *Flora,* 776 F.3d at 180.  On the contrary, Defendants appear "to *discourage* such speech through" their confidentiality policies, "which [are] being used to justify [Kimbrough's] termination in the instant case."  *Dougherty*, 772 F.3d at 988; (*see* Doc. No. 1-2; Doc. No. 3-4 at 5).

For another, the "*mode and manner* of his speech were [not] possible only as an ordinary corollary to his position as a government employee."  *De Ritis*, 861 F.3d at 454 (emphasis added) (internal quotations omitted).  Unlike a police officer completing an internal police form, a prosecutor writing a memorandum about a case, or a public defender making small talk with lawyers and judges before a hearing, *see id.*; *Garcetti*, 547 U.S. at 414, the *mode* and *manner* of

Kimbrough's speech—an off-duty phone call to Attorney Zeiger—were not the result of his position as a supervising correctional officer. And contrary to Defendants' argument, the content of the call does not mean it was speech pursuant to his official duties. *See De Ritis*, 861 F.3d at 454 ("Our cases consistently hold that . . . speech may be protected even if it concerns information related to or learned through public employment." (internal quotations omitted)). Thus, Kimbrough has plausibly alleged that he spoke as a citizen when he called Attorney Zeiger.

    *2. Kimbrough's speech involved matters of public concern.* Defendants next argue that Kimbrough's call with Attorney Zeiger did not implicate matters of public concern because it "was neither a public communication nor one that provided any value to the community." (Doc. No. 3-4 at 10–11.) "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 573 U.S. at 241 (internal quotations omitted). But if speech "addresses only the employee's own problems," it is "merely a personal grievance"; this is so even if "those problems brush against a matter of public concern by virtue of that employee's public employment." *De Ritis*, 861 F.3d at 455 (internal quotations omitted). To decide which end of the public-private spectrum the contested speech falls on, courts look at the speech's "content, form, and context." *Lane*, 573 U.S. at 241.

    After taking the allegations in the Complaint as true and viewing them in the light most favorable to Kimbrough, the Court finds that his phone call with Attorney Zeiger implicated matters of public concern. During the call, Kimbrough shared that the drugs that led to Patterson's overdose were retrieved by an inmate from his prior holding cell after the inmate was

9

strip-searched. (Doc. No. 1 at 7.) He explained that this was possible because the BCCF R&R Unit was understaffed. (*Id.*) Kimbrough also shared that for two years before Patterson's death, he had made "numerous complaints up the chain of command about the inadequate staffing of the R&R Unit and the attendant security concerns." (*Id.*) Despite his complaints, Bucks County and his supervisor did not correct the understaffing issue. The topics of this call—jail security, understaffing, and mismanagement—are all matters of public concern.[6]

Plus, the context of the speech shows that Kimbrough did not speak primarily to address his own employment problems. Mr. Patterson's overdose in BCCF and his estate's lawsuit against Bucks County were widely covered by local media outlets. (*Id.*) Kimbrough knew about the ongoing lawsuit and chose to share pertinent information about how the overdose happened and that the County was aware that the R&R Unit was understaffed. Unlike a personal issue with a supervisor or an employee's dissatisfaction with her workplace, *see Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 467–68 (3d Cir. 2015); *Connick v. Myers*, 461 U.S. 138, 148 (1983), Kimbrough did not speak about his own problems; rather, he spoke about "fundamental problems" in BCCF, *De Rittis*, 861 F.3d at 455 (internal quotations omitted). Thus, the Court finds that Kimbrough's call with Attorney Zeiger implicated a matter of public concern because he shared information about understaffing, mismanagement, and jail security that related to a high-profile lawsuit against his employer—a "subject of legitimate news interest." *Lane*, 573 U.S. at 241.

Defendants counter that this speech was private and that because Kimbrough called an attorney, he did not seek to inform the public. (Doc. No. 3-4 at 10–11.) Although the form of the speech is relevant, the Supreme Court has held that "privately expressed . . . complaints and

---

[6] At oral argument, defense counsel conceded that these topics are indeed matters of public concern. (January 23, 2025 Hr'g Draft Tr. at 32:22–33:2.)

opinions" are not beyond First Amendment protection. *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 413–16 (1979); *see also Azzaro v. County of Allegheny*, 110 F.3d 968, 978 (3d Cir. 1997) ("[I]f the content and circumstances of a private communication are such that the message conveyed would be relevant to the process of self-governance if disseminated to the community, that communication is public concern speech even though it occurred in a private context."). And the Third Circuit has said that "speech need not be public" to "address a matter of public concern." *Trent,* 2024 WL 4144403, at *2. Thus, despite the form of the speech, its content and context make clear that it involved matters of public concern.

    *3. Kimbrough's speech did not pose a threat to the operations of BCCF that justified Defendants' treatment.* Defendants last argue that even if Kimbrough spoke as a citizen on matters of public concern, his speech is not entitled to First Amendment protections because it threatened the effective and efficient operations of BCCF. (Doc. No. 3-4 at 12.) At the third and final step, the Court must assess whether Defendants had an "adequate justification for treating" Kimbrough "differently than the general public based on [their] needs as an employer under the *Pickering* balancing test." *Munroe*, 805 F.3d at 474. More specifically, the Court must balance Kimbrough's interest "as a citizen, in commenting upon matters of public concern" with "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Id.* at 466 (cleaned up). "If the Government's interest is 'significantly greater' than [Kimbrough's] interest in contributing to public debate, then [Kimbrough's] speech is not protected." *De Ritis*, 861 F.3d at 456–57 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968)). The *Pickering* balancing test is a "fact-intensive inquiry that requires consideration of the entire record." *Munroe*, 805 F.3d at 472 (internal quotations omitted).

To start, the Court finds that Kimbrough had a very strong interest in commenting upon matters of public concern. Kimbrough told Attorney Zeiger that Bucks County officials knew about chronic understaffing in the BCCF R&R Unit but did not take action to correct it, which ultimately played a role in the death of inmate Patterson. Unlike a public employee speaking out "only with respect to his own employment situation," Kimbrough "sought intervention" on behalf of a deceased inmate. *De Ritis*, 861 F.3d at 457. And his phone call exposed "government impropriety" in the form of Bucks County's refusal to correct understaffing in the R&R Unit. *Dougherty*, 772 F.3d at 991 (internal quotations omitted). Thus, Kimbrough's speech "occupies the highest rung of First Amendment protection," *id.* (internal quotations omitted), and so "defendants in the present case bear a truly heavy burden," *Baker v. Benton Area Sch. Dist.*, 418 F. Supp. 3d 17, 50 (M.D. Pa. 2019) (internal quotations omitted).

Defendants try to meet their heavy burden by arguing that their interests far outweigh Kimbrough's because his speech was "patently disruptive" and disclosed "confidential safety and security information." (Doc. No. 3-4 at 12.) Yet the only disruption that Defendants cite was their need to respond to a motion to reopen discovery in *Corbin v. Bucks County*, No. 23-cv-2784 (E.D. Pa.), and the Court is not persuaded that Kimbrough's speech otherwise threatened to disrupt jailhouse operations. "While the test for disruption varies depending upon the nature of the speech, the factors a court typically considers include whether the speech 'impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise.'" *Dougherty*, 772 F.3d at 991 (quoting *Rankin v. McPherson*, 483 U.S. 378, 388 (1987)). At this early stage, the Court lacks factual allegations to evaluate whether there were "close working

relationships" between Kimbrough and his superiors "for which it can persuasively be claimed that personal loyalty and confidence are necessary to [BCCF's] proper functioning." *Id*. at 991–92 (internal quotations omitted). And based on the allegations in the Complaint, the Court does not find that Kimbrough's speech was likely to impair discipline by superiors or harmony among co-workers, impede the performance of his daily duties, or interfere with the regular operations of BCCF. *See id.*

Though Defendants also claim that Kimbrough disclosed confidential information, they do not explain what kind of confidential safety and security information he disclosed. Instead, accepting the factual allegations in Kimbrough's Complaint as true, the only new information he disclosed was that the R&R Unit was chronically understaffed and that he made numerous complaints about this issue, to no avail. (Doc. No. 1 at 7–8.) While the County claims that this information was confidential and threatened the operations of the jail, its actions belie its claim. The County publicly disclosed most of this information itself in its response to the motion to reopen discovery in the wrongful death suit.[7] (*See* Doc. No. 4-1.)

Because Defendants have not carried their heavy burden, the Court finds that Kimbrough's interests outweigh Defendants'.

\* \* \*

At this early stage, the Court finds that Kimbrough has stated a claim for First Amendment retaliation against the Individual Defendants. When Kimbrough called Attorney

---

[7] Under Federal Rule of Evidence 201, the Court may take judicial notice at the pleading stage of a fact that is not subject to reasonable dispute and is readily verifiable by a source whose accuracy cannot be reasonably questioned. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (holding that "matters of public record of which the court can take judicial notice" may be considered when deciding a motion to dismiss). The Court takes judicial notice of this document only "for the limited purpose of showing that a particular statement was made by a particular person," and "not for the truth of the matters purportedly contained within those documents." *Roche v. Aetna, Inc.*, No. 122CV00607NLHEAP, 2023 WL 3173394, at \*4 (D.N.J. May 1, 2023) (internal quotations omitted).

Zeiger, he spoke as a citizen on matters of public concern. This call neither disrupted nor threatened to disrupt the efficient and orderly operations of BCCF. His speech was thus protected, and he was fired for engaging in protected speech. In other words, Kimbrough has stated a plausible First Amendment retaliation claim against the Individual Defendants.

### B. The Individual Defendants Are Not Entitled to Qualified Immunity

The Individual Defendants—Smith, Randolph, and Katz—next argue that they are entitled to qualified immunity on Kimbrough's First Amendment retaliation claim. (Doc. No. 3-4 at 12–13.) "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotations omitted). "At the motion to dismiss stage, the defendant has the burden of pleading and proving qualified immunity." *Miller v. Goggin*, 672 F. Supp. 3d 14, 57 (E.D. Pa. 2023) (internal quotations omitted).

Because the Court found that Kimbrough pled a violation of his First Amendment rights, the qualified immunity analysis turns on the second prong of the analysis—whether the right was clearly established when Kimbrough was fired. Here, Defendants present no argument about whether the constitutional right at issue was clearly established. They state only that the "Complaint has not alleged . . . any facts to show that Defendants violated clearly established constitutional rights in terminating [Kimbrough]."[8] (Doc. No. 3-4 at 12–13.) Though they use the phrase "clearly established" (*id.* at 13), they provide no case law or other "support to demonstrate whether the right was clearly established." *Aspinall v. Thomas*, 118 F. Supp. 3d

---

[8] Defendants also assert that they are entitled to qualified immunity because they acted "within their discretionary authority." (Doc. No. 3-4 at 13.) But whether Defendants are entitled to qualified immunity depends not on whether they acted within their discretionary authority, but whether their conduct violated a clearly established constitutional or statutory right.

664, 678–79 (M.D. Pa. 2015). "Instead, they just use the phrase . . . and cross their fingers in the hopes that the Court will dismiss the claims against them." *Jennings v. Borst*, No. 5:18-CV-05624-JDW, 2019 WL 4447593, at *3 (E.D. Pa. Sept. 16, 2019). But "[t]he Supreme Court has established, and this Circuit has affirmed, the principle that the defendant bears the burden of demonstrating qualified immunity, as it is a defense." *Aspinall*, 118 F. Supp. 3d at 678–79 (citing *Crawford–El v. Britton*, 523 U.S. 574, 595 (1998). "Indeed, qualified immunity is not a talismanic phrase that relieves Defendants of their burden to show that their actions did not violate Plaintiff's clearly established constitutional rights." *Miller*, 672 F. Supp. 3d at 57 (internal quotations omitted). Because Defendants "have not provided any support to prove the second prong of the qualified immunity inquiry," the Court "concludes that they are not entitled to qualified immunity at this stage in the litigation." *Aspinall*, 118 F. Supp. 3d at 679. If appropriate, Defendants may raise this defense again at summary judgment.

### C. Kimbrough Fails to State a First Amendment Retaliation Claim Against Bucks County

In Count Two, Kimbrough sues Defendant Bucks County under 42 U.S.C. § 1983 for First Amendment retaliation. (Doc. No. 1 at 11–12.) Because he alleges that Bucks County violated his constitutional rights, "the standards annunciated in *Monell* apply to [his] claim." *Lahovski v. Rush Twp.*, 441 F. Supp. 3d 43, 60 (M.D. Pa. 2020). In *Monell*, the Supreme Court held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, for municipal liability to attach, Kimbrough must point to a Bucks County policy or custom that caused his constitutional injury.[9] *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).

---

[9] Kimbrough does not pursue a failure-to-train theory of municipal liability in his Complaint. So, the only avenues for municipal liability under § 1983 are based on a policy or custom. *Mulholland v. County of Bucks*, 706 F.3d 227, 237 (3d Cir. 2013).

Here, Kimbrough argues that he has stated a First Amendment retaliation claim against Bucks County because he was fired pursuant to five Bucks County policies.[10] (Doc. No. 1 at 11–12.)  Though his argument has some intuitive appeal,[11] the Court finds that these allegations are insufficient to impose municipal liability against the County for First Amendment retaliation. The retaliatory action at issue here is the decision to terminate Kimbrough's employment at BCCF. (*Id.*)  But missing from Kimbrough's Complaint are allegations that the decision to terminate his employment constitutes a policy made by a decisionmaker who "possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986); *see also Damiano v. Scranton Sch. Dist.*, 135 F. Supp. 3d 255, 267 (M.D. Pa. 2015) ("[P]laintiff must show that the alleged unlawful conduct of the . . . board members regarding her . . . termination constitutes a policy made by

---

[10] In his Complaint, Kimbrough makes a single, conclusory allegation "that Bucks County maintains a practice or custom of disciplining or discharging employees who allegedly violate [County] policies without regard to whether the employee's conduct is constitutionally protected." (Doc. No. 1 at 12.)  This conclusory allegation invites the Court to "infer the existence of a custom from a single incident of unconstitutional misconduct" and threatens to circumvent the limitations of *Monell*. *Henderson v. Matthews*, 556 F. Supp. 3d 531, 535 (E.D. Pa. 2020) (internal quotations omitted).  In light of these dangers, the Court finds that Kimbrough has not plausibly alleged the existence of a custom.

[11] In his brief, Kimbrough tries to defend his First Amendment retaliation claim against the County by arguing that these five policies are unconstitutionally vague and overbroad. (Doc. No. 4 at 16–20.)  But even if that were true, it does not follow that Kimbrough has stated a First Amendment retaliation claim against Bucks County.  He still has not alleged that the decision to terminate his employment was made by someone with final policy-making authority, by someone who had been given the authority to act on behalf of the County, or by someone whose actions were later ratified by the County.  *See Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006).  Plus, the two cases he cites in support of his First Amendment retaliation claim against the County deal with vagueness and overbreadth challenges to workplace regulations, not First Amendment retaliation claims.  *See Gasparinetti v. Kerr*, 568 F.2d 311, 312 (3d Cir. 1977) (evaluating a vagueness and overbreadth challenge to local government regulations); *Aiello v. City of Wilmington*, 623 F.2d 845, 847 (3d Cir. 1980) (same). In sum, based on the allegations in his Complaint, the Court cannot discern whether the County, as opposed to just the conduct of its employees, was the "moving force" behind the decision to terminate Kimbrough's employment. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (internal quotations omitted).

'decisionmaker[s] possess[ing] final authority to establish municipal policy' who 'issue[ ] an official proclamation, policy, or edict.'" (citing *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996))).

For most First Amendment retaliation claims against public employers, the policy requirement of a *Monell* claim "seldom presents an impediment" because this requirement can be met in several different ways.  22 *Am. Jur. Proof of Facts 3d* 203 (1993).  As relevant here, Kimbrough could have alleged that (1) Lauren Smith (Chief Human Resource Officer for Bucks County who signed his termination letter) had "final policy-making authority" with respect to the decision to fire him "such that [her] conduct represents official policy" or (2) "a final policy-maker renders [Smith's] conduct official for liability purposes by having delegated to [her] authority to act or speak for the government, or by ratifying [her decision] after it has occurred." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006); (Doc. No. 1-1).  Because Kimbrough's Complaint currently lacks these allegations, the Court dismisses Count Two without prejudice.  Kimbrough will be given an opportunity to amend this Count if he can, in good faith, correct the errors identified by the Court.

### D. Kimbrough's State-Law Claims Fail

Last, in Counts Three and Four, Kimbrough sues Bucks County and the Individual Defendants for wrongful discharge against public policy under Pennsylvania law.  (Doc. No. 1 at 13–16.)  Because the Court denied Defendants' motion to dismiss Kimbrough's federal claim against the Individual Defendants, the Court may exercise supplemental jurisdiction over these state law claims.  *See* 28 U.S.C. § 1367.  As explained below, however, the Court grants Defendants' motion to dismiss the wrongful discharge claims because Bucks County and the Individual Defendants enjoy immunity under Pennsylvania law.

"Although not raised in Defendants' moving papers, Plaintiff's wrongful discharge claim against [Bucks County] is barred by the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA"), 42 Pa. Cons. Stat. Ann. § 8541, *et seq.*, which grants municipalities . . . immunity from liability for all state law tort claims."[12]  *Nusser v. Township of Hanover*, No. CV 20-1587, 2022 WL 623371, at *8 (W.D. Pa. Mar. 3, 2022).  While there are eight enumerated exceptions to immunity under the PPSTCA, "a common law action for wrongful discharge in Pennsylvania is not one of" them.  *Id.*; *see also Cucchi v. Kagel*, Civ. No. 17-01597, 2018 WL 1141255, at *6 (E.D. Pa. Mar. 2, 2018) (holding that a wrongful discharge claim is barred by the PPSTCA).  Thus, the Court dismisses Kimbrough's wrongful discharge claim against Bucks County in Count Three with prejudice because the County is immune from such a claim under the PPSTCA.

For a similar reason, Kimbrough's wrongful discharge claim against the Individual Defendants also fails.[13]  Like the County, the Individual Defendants enjoy immunity for acts taken with the scope of their employment.  *See Sanford v. Stiles,* 456 F.3d 298, 315 (3d Cir. 2006) ("Municipal *employees* . . . are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment."); *see also* 42 Pa. Cons. Stat. Ann. § 8545 ("An employee of a local agency is

---

[12] This Court "has the power to dismiss claims *sua sponte* under Rule 12(b)(6)."  *Bintliff-Ritchie v. Am. Reinsurance Co.*, 285 F. App'x 940, 943 (3d Cir. 2008).

[13] Although neither party raised this issue, the Court notes that some courts in this Circuit have found that wrongful termination claims do not exist against defendants acting in their individual capacity. *See, e.g.*, *McGuire v. Palmerton Hosp.,* No. 12–cv–1762, 2012 WL 5494924, at *5 (M.D. Pa. Nov. 13, 2012) (finding no wrongful termination claim exists against defendant in individual capacity); *Hrosik v. Latrobe Steel Co.,* No. 94–1361, 1995 WL 456212, at *6 (W.D. Pa. Apr. 25, 1995) ("A wrongful discharge claim exists only against an employee's employer.").  Since Kimbrough's wrongful termination claim against the Individual Defendants fails on other grounds, the Court need not decide whether there is in fact a cause of action for wrongful discharge against defendants acting in their individual capacity under Pennsylvania law.

liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter."). Kimbrough's Complaint lacks allegations that the Individual Defendants acted outside the scope of their authority when they fired him, so the Individual Defendants enjoy immunity under state law.[14]  Thus, the Court dismisses his wrongful discharge claims against the Individual Defendants in Count Four without prejudice.

### IV.    Conclusion

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion to dismiss.  The Court grants Defendants' motion to dismiss Counts Two, Three, and Four.  But only Count Three—Kimbrough's wrongful discharge claim against Bucks County—is dismissed with prejudice.  The Court denies Defendants' motion to dismiss Count I—Kimbrough's First Amendment retaliation claim against the Individual Defendants.  An accompanying Order follows.

---

[14] Immunity for municipal employees does not extend to conduct that amounts to "crime, actual fraud, actual malice, or willful misconduct." 42 Pa. Cons. Stat. Ann. § 8550. Because none of Kimbrough's allegations rise to that level, the Individual Defendants enjoy immunity under state law. *See Sanford*, 456 F.3d at 315.  At oral argument, Kimbrough conceded that he has not alleged malice but argued that his allegations were sufficient to infer recklessness. (January 23, 2025 Hr'g Draft Tr. at 49:16–50:12.)  But recklessness is not sufficient. "[A]s the Pennsylvania Supreme Court has recognized, willful misconduct is a demanding level of fault.  Willful misconduct has been defined . . . as 'conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied.'" *Sanford*, 456 F.3d at 315 (citing *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994)). In other words, "even where a public employee acts with a degree of culpability equivalent to recklessness, Pennsylvania law nevertheless affords him immunity." *Bright v. Westmoreland County*, 443 F.3d 276, 287 (3d Cir. 2006) (internal quotations omitted).

Though the Court is skeptical that Kimbrough can allege facts that rise to the level of willful misconduct, the Court will provide him an opportunity to do so consistent with the law.  The Court thus dismisses his wrongful discharge claim against the Individual Defendants without prejudice.