**EXHIBIT 48**

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT

OF PENNSYLVANIA

* * * * * * * *

ARA KIMBROUGH,          *

    Plaintiff          *    Case No.

    vs.                *    2:24-CV-04470-KSM

BUCKS COUNTY, ET   *

AL,                     *

    Defendants       *

* * * * * * * *

DEPOSITION OF

MARGARET MCKEVITT

February 5, 2025

Any reproduction of this transcript is

prohibited without authorization by

the certifying agency.

1              D E P O S I T I O N

2                   O F

3    MARGARET MCKEVITT, taken on behalf of

4    the Plaintiff herein, pursuant to the

5    Rules of Civil Procedure, taken before

6    me, the undersigned, Ethan Reese, a

7    Court Reporter and Notary Public in

8    and for the Commonwealth of

9    Pennsylvania, at the Bucks County

10   Courthouse, 55 E. Court Street

11   Doylestown, PA, on Wednesday, February

12   5, 2025 beginning at 1:08 p.m.

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
1              A P P E A R A N C E S

2

3    WILLIAM MANSOUR, ESQUIRE

4    Mansour Law, LLC

5    961 Marcon Boulevard

6    Suite 425

7    Allentown, PA  18109

8         COUNSEL FOR PLAINTIFF

9

10   JACLYN GRIESER, ESQUIRE

11   Bucks County

12   55 E. Court Street

13   Doylestown, PA  18901

14        COUNSEL FOR DEFENDANT

15

16   ALSO PRESENT:

17   DARA BURNS, ESQUIRE

18

19

20

21

22

23

24

25
```

4

1                         I N D E X

2

3    DISCUSSION AMONG PARTIES          7 - 8

4    WITNESS: MARGARET MCKEVITT

5    EXAMINATION

6        By Attorney Mansour          9 - 55

7    DISCUSSION AMONG PARTIES        55 - 58

8    CERTIFICATE                          59

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

1                    E X H I B I T   P A G E

2

3                                          P A G E

4      N U M B E R     D E S C R I P T I O N        I D E N T I F I E D

5      P - 1      Termination Letter          19

6      P - 2      Responses to

7                 Interrogatories             30

8      P - 3      Response to Discovery

9                 Requests                    45

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24            E X H I B I T S   N O T   P R O V I D E D

25

6

<u>O B J E C T I O N   P A G E</u>

<u>A T T O R N E Y</u>                                    <u>P A G E</u>

Grieser                                    23,  24,  39

7

1              S T I P U L A T I O N

2    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

3    (It is hereby stipulated and agreed by

4    and between counsel for the respective

5    parties that reading, signing,

6    sealing, certification and filing are

7    not waived.)

8    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

9              P R O C E E D I N G S

10   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

11            COURT REPORTER:

12            And did you want a copy

13      of the transcript from today?

14            ATTORNEY MANSOUR:

15            Yes, please.  Just

16      electronic copies.

17            COURT REPORTER:

18            Sure.

19            And Counsel, do you also

20      want one?

21            ATTORNEY GRIESER:

22            Yes, just electronic.

23                  - - -

24         MARGARET MCKEVITT,

25   CALLED AS A WITNESS IN THE FOLLOWING

8

1    PROCEEDING, AND HAVING FIRST BEEN DULY

2    SWORN, TESTIFIED AND SAID AS FOLLOWS:

3                    - - -

4                    ATTORNEY MANSOUR:

5                    And usual stipulations,

6         just all objections being

7         reserved for the time of trial,

8         except as to form and

9         privilege?

10                   ATTORNEY GRIESER:

11                   That's correct.

12                   ATTORNEY MANSOUR:

13                   Okay.

14                   ATTORNEY GRIESER:

15                   And I just want to make

16        clear that Ms. McKevitt is

17        reserving her right to review

18        the deposition and to do a

19        ratta on it if necessary.

20                   COURT REPORTER:

21                   Okay.

22                   ATTORNEY MANSOUR:

23                   Okay.

24                   - - -

25                   EXAMINATION

9

1                           - - -

2       <u>BY ATTORNEY MANSOUR:</u>

3       Q.        Ms. McKevitt, how are you?

4       A.        Good.

5       Q.        My name is William Mansour.  I

6       am an attorney who's representing Ara

7       Kimbrough in a lawsuit that he has

8       filed against Bucks County, as well as

9       a number of individual defendants in

10      the Eastern District of Pennsylvania.

11      We're here today to take your

12      deposition in that case.  Before I get

13      started in earnest, I just want to go

14      over a few ground rules about how the

15      deposition is going to proceed.

16              First, let me ask you, have you

17      ever been deposed before?

18      A.        Yes.

19      Q.        So this is not your first

20      rodeo.  So a lot of the things I'm

21      going to say you've probably heard

22      before, but nevertheless, I'm going to

23      go over them.

24              One of the most important rules

25      is that, as you can see, we have a

1    court reporter here today who's taking

2    down everything that's said during

3    this deposition.  And so it's

4    important that your answers to my

5    questions need to be verbal.  So no

6    nodding the head, shaking the head,

7    shrugging the shoulders.  Things like,

8    uh-huh, uh-uh don't come across well

9    on the record.

10         So can you confirm that all

11   your answers today will be verbalized?

12   A.    Yes.

13   Q.    Thank you.

14         If you don't understand a

15   question that I ask, just ask me to

16   rephrase it, and I'll be happy to do

17   that.  If I ask you a question and you

18   do answer it, I'm going to assume two

19   things.  One, that you heard it and

20   two, that you understood it.

21         Do you understand that?

22   A.    Yes.

23   Q.    I don't want us to talk over

24   each other.  So there may be instances

25   where I'm asking a question and you

11

1    know what the question is going to be.

2    I just ask for the benefit of the

3    court reporter that you wait until my

4    question is done before you answer it,

5    and then I will afford you the same

6    courtesy of waiting until your

7    response is finished before I ask my

8    next question.

9         Understood?

10   A.    Yes.

11   Q.    I don't want you to guess or

12   speculate about anything.  Only answer

13   a question if you know the answer.

14        Do you understand that?

15   A.    Understood.

16   Q.    If at any time, you need to

17   take a break during this deposition, I

18   understand that we have to do a hard

19   stop at 2:00, so I don't anticipate

20   there will be any need for a break.

21   But if, for whatever reason, you need

22   to have a break, that's fine.  The

23   only thing I ask is that if I have a

24   pending question, you answer it

25   completely first before we take a

12

1    break.

2         Understood?

3    A.    Understood.

4    Q.    Okay.  Very good.

5         Could you please state your

6    full name for the record?

7    A.    Margaret Ann McKevitt.

8    Q.    Okay.

9         And Ms. McKevitt, are you under

10   the influence of any drugs or alcohol

11   at this moment?

12   A.    No.

13   Q.    Okay.

14        Have you, within the last 24

15   hours, taken any prescription

16   medications that would impair your

17   ability to either hear or understand

18   any of my questions?

19   A.    No.

20   Q.    Within the last 24 hours, have

21   you taken any medications that would

22   impair your ability to recall any of

23   the events I might be asking you

24   about?

25   A.    No.

13

1    Q.    What is your position with the

2    County?

3    A.    Chief Operating officer.

4    Q.    How long have you been COO for?

5    A.    Five years.

6    Q.    And tell me a little bit about

7    your job duties as a COO.  As the COO

8    of the County.

9    A.    Responsible for direction and

10   operations for all of the divisions in

11   the County.  And I work at the --- the

12   County Board of Commissioners.

13   Q.    Do you have authority to

14   discharge employees?

15   A.    Yes.

16   Q.    Ara Kimbrough used to be an

17   administrative lieutenant at the Bucks

18   County Correctional Facility.

19         Correct?

20   A.    I'm sorry, could you repeat

21   that?

22   Q.    Ara Kimbrough, my client, he

23   was a administrative lieutenant at the

24   Bucks County Correctional Facility.

25         Correct?

14

1    A.      Yes.

2    Q.      And he was discharged from that

3    position on July 29th, 2024.

4            Correct?

5    A.      Yes.

6    Q.      And you were involved in the

7    decision to terminate him.

8            Correct?

9    A.      Yes.

10   Q.      Were you the person who made

11   the final decision to terminate him?

12   A.      Yes.  It was --- so the way

13   that this works, we collectively meet,

14   we make the decision, and then it gets

15   ratified on agenda by the county

16   commissioners at a subsequent meeting

17   ---

18   Q.      When you say ---?

19   A.      --- following the ---.

20   Q. I'm sorry about that, what was the

21   last part of that response?

22   A.      We meet, we make the

23   determination, and then it goes

24   through the system, which is called

25   Lawson, goes on an agenda, and it gets

15

1    ratified by the county commissioners

2    at their public meeting.

3    Q.    Is that the procedure that was

4    followed in this case with respect to

5    - - -

6    A.    Yes.

7    Q.    - - - Mr. Kimbrough's

8    termination?

9    A.    Yes.

10   Q.    When you say we, who are you

11   referring to specifically with regards

12   to Mr. Kimbrough?

13   A.    The department head, HR

14   representatives and law department

15   representatives.

16   Q.    Okay.

17         So more specifically, with

18   respect to Mr. Kimbrough, the

19   Department head would have been David

20   Kratz?

21   A.    Yes.

22   Q.    And the human resources

23   representative would have been Lauren

24   Smith?

25   A.    Yes.

16

1    Q.    Anybody else from human

2    resources that was involved in the

3    decision to terminate Mr. Kimbrough?

4    A.    I don't recall.

5    Q.    And you said representatives

6    from the law Department.  Can you

7    identify who specifically?

8    A.    I don't recall that either,

9    unfortunately.  I'm sorry.

10   Q.    Was Shae Randolph one of those

11   persons?

12   A.    Yes, she could have been.  Yes.

13   Q.    How about ---?

14   A.    She was our HR representative

15   for the law department.

16   Q.    How about Ms. Grieser?

17              ATTORNEY GRIESER:

18              Grieser.

19              ATTORNEY MANSOUR:

20              Grieser.  Jacqueline

21         Grieser, I'm sorry.  Apologies.

22              ATTORNEY GRIESER:

23              That's okay.

24              THE WITNESS:

25              I don't recall.  I don't

17

1        recall if you were on the ---.

2    BY ATTORNEY MANSOUR:

3    Q.      And Ms. Burns?

4    A.      I don't think she was here

5    then.  I don't remember.  No.

6    Q.      Now, prior to Mr. Kimbrough's

7    discharge, I think in July of 2023, if

8    I'm not mistaken, the County was in a

9    certain --- the County and certain

10   employees were being sued in federal

11   court by the estate of Joshua

12   Patterson.

13        Is that correct?

14   A.      Correct.

15   Q.      And that lawsuit related to Mr.

16   Patterson --- Mr. Patterson's fatal

17   drug overdose while incarcerated at

18   BCCF.

19        Is that correct?

20   A.      Correct.

21   Q.      And that estate was represented

22   by Attorney Brian Zeiger.

23        Correct?

24   A.      I don't know.

25                ATTORNEY MANSOUR:

18

1           Now --- do you have

2     stickers?  Or I can just write

3     on it.

4           ATTORNEY GRIESER:

5           Do you have the first

6     Bates stamp number on that?

7           ATTORNEY MANSOUR:

8           This is actually just

9     the exhibit from the complaint.

10    I think it's been produced with

11    a Bates stamp.  But it's the

12    exhibits ---

13          ATTORNEY GRIESER:

14          Okay.

15          ATTORNEY MANSOUR:

16          --- from the complaint,

17    yeah.

18          ATTORNEY GRIESER:

19          So the ---

20          ATTORNEY MANSOUR:

21          And I have a ---.

22          ATTORNEY GRIESER:

23          --- fact finding,

24    termination?

25          ATTORNEY MANSOUR:

19

1           Yeah, the termination

2       letter and the disciplinary

3       notice.

4           Okay, so I'm showing you

5       a document that I've marked as

6       P-1.  I'll represent to you

7       that this is the termination

8       letter and the accompanying

9       disciplinary action form that

10      was provided to my client on

11      July 29th, 2024.

12              - - -

13          (Whereupon, Exhibit P-1,

14          Termination Letter, was

15          marked for

16          identification.)

17              - - -

18  BY ATTORNEY MANSOUR:

19  Q.    Just take a moment and look

20  this over and just look up and let me

21  know when you're done reviewing it.

22          You've seen this letter before?

23  A.    Yes.

24  Q.    And how about the second page,

25  the disciplinary action form?  You've

20

1    seen that before, too?

2    A.      Yes.

3    Q.      And it appears that this letter

4    was at least signed by Lauren Smith.

5           Is that correct?

6    A.      Yes.

7    Q.      Did you review this letter

8    before Ms. Smith provided it to my

9    client?

10   A.      No.

11   Q.      So this is the first time ---

12   is this the first time you're seeing

13   this letter?

14   A.      No.

15   Q.      Okay.

16          So you did not see it before it

17   was provided to Mr. Kimbrough, is that

18   what you're saying?

19   A.      No.

20   Q.      Okay.

21          And how about the second page,

22   the disciplinary action form?  Did you

23   see that before it was provided to my

24   client?

25   A.      No.

21

1    Q.    Have you seen it before today?

2    A.    Yes.

3    Q.    Do you recall when the first

4    time you saw either this letter or the

5    disciplinary action form was?

6    A.    During our meeting to discuss

7    termination.

8    Q.    Before --- to discuss Mr.

9    Kimbrough's termination?

10   A.    Yes.

11   Q.    Before he was terminated?

12   A.    Yes.

13   Q.    Okay.

14         So you did see this letter

15   before it was provided to Mr.

16   Kimbrough?

17   A.    I'm sorry.  Yes.

18   Q.    Okay.

19         So you saw both the letter and

20   the disciplinary action form before

21   they were provided to Mr. Kimbrough?

22   A.    Yes.  Yes.

23   Q.    So I just want to direct your

24   attention to the second page of that

25   document, the disciplinary action

22

1    form.  And in it, it states that Mr.

2    Kimbrough --- it was brought to the

3    County's attention that Mr. Kimbrough

4    shared confidential information with

5    Plaintiff's counsel.  And in the last

6    sentence it says, during both of these

7    meetings that are referenced, you

8    admitted to contacting Plaintiff's

9    attorney and sharing confidential

10   information which pertained to a

11   lawsuit against the DOC/County of

12   Bucks.

13           Did I read that correctly?

14   A.      Yes.

15   Q.      Okay.

16           And that's the reason Mr.

17   Kimbrough was terminated?

18   A.      Yes.

19   Q.      Can you tell me what

20   confidential information he shared?

21   A.      I cannot.

22   Q.      Were --- in terms of the

23   decision to terminate Mr. Kimbrough,

24   was the fact that he had a telephone

25   conversation with Plaintiff's attorney

23

1    as referenced here, was that a topic

2    of conversation in those discussions?

3    A.    Yes.

4    Q.    And was it brought up during

5    those conversations that the

6    information was confidential?

7                    ATTORNEY GRIESER:

8                    Objection as to form.

9            It's work product and

10           privilege, attorney-client

11           privilege.

12                   ATTORNEY MANSOUR:

13                   You can go ahead and

14           answer.

15                   THE WITNESS:

16                   I can't.

17                   ATTORNEY GRIESER:

18                   No, you --- not with

19           privilege.

20                   THE WITNESS:

21                   I can't answer it.

22                   ATTORNEY MANSOUR:

23                   Well, what's privileged?

24                   ATTORNEY GRIESER:

25                   You asked what advice

24

```
1          she ---.
2                    ATTORNEY MANSOUR:
3                    I didn't ask what
4          advice.  I said was the issue
5          of him providing confidential
6          information brought up during
7          those discussions?
8                    ATTORNEY GRIESER:
9                    That's --- again, I'm
10         going to object.  In general?
11         The reason why he was
12         terminated?
13  BY ATTORNEY MANSOUR:
14  Q.     I mean, the reason why he's
15  terminated is in this disciplinary
16  action form.  Right?  So it's not
17  privileged. He was fired for conflict
18  --- for providing confidential
19  information.
20         Right?
21  A.     Correct.
22  Q.     Okay.
23         And that was discussed prior to
24  firing him.
25         Right?
```

25

1    A.      Correct.

2    Q.      The fact that he had shared

3    confidential information?

4    A.      Correct.

5    Q.      What was the confidential

6    information?

7    A.      I cannot share that with you.

8    Q.      Why not?

9    A.      It's confidential information.

10                   ATTORNEY GRIESER:

11                   You can answer in

12           general terms.

13                   THE WITNESS:

14                   In general terms?

15                   ATTORNEY GRIESER:

16                   Uh-huh.

17                   THE WITNESS:

18                   Okay.

19                   He shared information

20           about the inner workings of the

21           correctional facility.

22    BY ATTORNEY MANSOUR:

23    Q.      Okay.

24            And what information

25    specifically are you claiming was

26

1    confidential?

2    A.    All of it.

3    Q.    Specifically.

4    A.    Everything that he shared.

5    Q.    Which is what?

6    A.    I --- if I share that with you,

7    then it's no longer confidential.

8    Q.    Okay.

9                ATTORNEY GRIESER:

10               I mean, you can do it

11         --- you can speak about it

12         generally.  Intake or ---.

13               THE WITNESS:

14               Okay.  Okay.  So in

15         general, he shared how the

16         prison performs their

17         procedures, their intake

18         procedures.

19   BY ATTORNEY MANSOUR:

20   Q.    How they --- okay.  And that's

21   confidential why?

22   A.    Because it is policies and

23   procedures written within the

24   correctional facility's purview that

25   he shared with outside counsel.

27

1    Q.    Okay.

2          And you're talking about the

3    intake procedure.

4          Correct?

5    A.    Correct.

6    Q.    Okay.

7          Doesn't every inmate that is

8    processed in the B --- in the BCCF,

9    the correctional facility, go through

10   the intake procedure?

11   A.    Yes.

12   Q.    So wouldn't every inmate know

13   exactly what BCCF's intake procedure

14   is?

15   A.    No.

16   Q.    Why not?

17   A.    Because they may not.  They may

18   not know all of what procedures they

19   follow.

20   Q.    Okay.

21          So, I mean, you've talked about

22   the intake procedure generally.  So

23   there are some things of the intake

24   procedure that inmates would know.

25          Right?

28

1    A.        Yes.

2    Q.        And you're saying there's some

3    things that inmates would not know?

4    A.        Correct.

5    Q.        Okay.

6              So what things did Mr.

7    Kimbrough share that inmates would not

8    know?

9                        ATTORNEY GRIESER:

10                       Generally.

11                       ATTORNEY MANSOUR:

12                       Specifically.

13                       ATTORNEY GRIESER:

14                       That's the whole reason

15              why he was fired is because

16              it's confidential.

17                       ATTORNEY MANSOUR:

18                       But that's --- you know,

19              it's highly pertinent for

20              litigation.  I mean, you're

21              claiming that he was discharged

22              for sharing confidential

23              information.  I think I have a

24              right to know what information

25              specifically that he shared you

29

1      think is confidential.

2              ATTORNEY GRIESER:

3              And so long as you stick

4      with how you phrased it in your

5      complaint, I think we're okay.

6      But as far as actual names,

7      actual movements, actual names

8      of inmates who got pulled

9      where, anything like that is

10     confidential.  But I think you

11     can still get what you need by

12     ---.

13             ATTORNEY MANSOUR:

14             Well, I mean --- okay.

15     It's alleged in the complaint.

16     The complaint is public.  It's

17     not under seal.

18             ATTORNEY GRIESER:

19             Yeah, that's fine.

20             ATTORNEY MANSOUR:

21             Names are named, people

22     are named.  So I'm not sure on

23     what basis you're claiming it's

24     confidential.  Anybody who

25     wants to see what he alleged

30

1          can go look it up.  So let's

2          maybe do it this way.  We'll

3          mark this P-2.

4                   - - -

5              (Whereupon, Exhibit P-2,

6          Responses to

7          Interrogatories, was

8          marked for

9          identification.)

10                  - - -

11             ATTORNEY MANSOUR:

12             So I'm showing you

13     document I've marked P-2.  I

14     will represent to you that

15     these are the --- Mr.

16     Kimbrough's responses to the

17     County's interrogatories.  And

18     I want to direct your attention

19     to the third page,

20     interrogatory number nine.

21  BY ATTORNEY MANSOUR:

22  Q.    So were asked by the County to

23  identify and describe with specificity

24  the information disclosed by Plaintiff

25  during his May 29th, 2024, telephone

31

1    conversation with Attorney Brian

2    Zeiger.  And we responded below.  And

3    it goes on to the next page.  Take a

4    moment, if you could, and read that

5    response.

                    ATTORNEY GRIESER:

6

7                        This isn't public.  And

8            we --- this is the reason why

9            we're seeking an agreement for

10           a protective order.  And then

11           we'll move to have it sealed as

12           well.

                    ATTORNEY MANSOUR:

13

14                       I understand, but if

15           you're --- if you're asking my

16           client, you --- this is an

17           interrogatory of my client, my

18           client gave a response.  You're

19           telling her --- you're telling

20           me I can't ask her about this?

                    ATTORNEY GRIESER:

21

22                       I'm saying this isn't

23           public.

                    ATTORNEY MANSOUR:

24

25                       Okay.

32

1                  ATTORNEY GRIESER:

2                  Would you agree to a

3         protective order for this?

4                  ATTORNEY MANSOUR:

5                  No, because it's also in

6         the complaint.

7                  ATTORNEY GRIESER:

8                  It's not in the

9         complaint specifically.

10                 ATTORNEY MANSOUR:

11                 It is.  Pretty much

12       everything is specifically in

13         the complaint.

14                 ATTORNEY GRIESER:

15                 Not pretty much.

16                 ATTORNEY MANSOUR:

17                 Names, exactly what

18       happened.  Yeah, it's almost

19         all in the complaint.

20                 ATTORNEY GRIESER:

21                 Which is why we're

22      saying ---.

23                 ATTORNEY MANSOUR:

24                 Paragraph 22.

25                 ATTORNEY GRIESER:

33

1           We're saying that that's
2       confidential.
3               ATTORNEY MANSOUR:
4               But it's not because
5       it's part of the public record.
6               ATTORNEY GRIESER:
7               Because you made it part
8       of the public record.
9               ATTORNEY MANSOUR:
10              And you didn't move to
11      seal it or otherwise claim that
12      it's confidential and it should
13      not be part of the public
14      record.
15              ATTORNEY GRIESER:
16              We ---.
17              ATTORNEY MANSOUR:
18              And in fact, you know,
19      probably from what I could
20      tell, there's been, you know,
21      news articles written about
22      this, so who knows how many
23      people ---.
24              ATTORNEY GRIESER:
25              Not with these

34

1    specifics.

2              ATTORNEY MANSOUR:

3              I mean, you can compare

4    them.  It's pretty much

5    identical because he's been

6    saying the same thing since day

7    one.  In the complaint, in the

8    response to interrogatories.

9    It's all the same information.

10             ATTORNEY GRIESER:

11             Not these --- not the

12   specifics.

13             ATTORNEY MANSOUR:

14             It is.  I mean, have you

15   read the response?

16             ATTORNEY GRIESER:

17             I did read the response.

18             ATTORNEY MANSOUR:

19             It's the same thing.

20   Because that's what he said.

21   There's No --- I mean, can you

22   tell me what in here is

23   different from what's in the

24   complaint?

25             ATTORNEY GRIESER:

35

1              Yes, the complaint says
2      things generally about
3      understaffing.
4           ATTORNEY MANSOUR:
5              No, it doesn't.  Read
6      paragraph 22.  Here's a copy of
7      it.  You can read it.
8           ATTORNEY GRIESER:
9              But again, this is what
10     you made public, ---
11          ATTORNEY MANSOUR:
12             Public.
13          ATTORNEY GRIESER:
14             --- which is why we are
15     trying to move for a protective
16     order.
17          ATTORNEY MANSOUR:
18             Okay, but you haven't
19     yet.  And I don't know if --- I
20     mean, a protective order from
21     --- you know, I'm not really
22     sure what the protective order
23     is about, but it's certainly
24     not about sealing what's in the
25     complaint.

36

1          ATTORNEY GRIESER:

2          It was my understanding

3     that you had agreed to a

4     protective order.

5          ATTORNEY MANSOUR:

6          But not to sealing

7     what's in the complaint.  I

8     didn't --- I didn't --- it was

9     based on the disclosure of

10    certain documents that I

11    requested in discovery.  I

12    didn't agree to seal anything

13    in the complaint.

14         ATTORNEY GRIESER:

15         Would you stipulate to

16    protective order over that?

17         ATTORNEY MANSOUR:

18         No.

19         ATTORNEY GRIESER:

20         Why wouldn't you?  You

21    can still do what you have to

22    do.

23         ATTORNEY MANSOUR:

24         Because our position is

25    it's not confidential and it's

37

```
1          already there.  It's been a
2          part of the public record now
3          for, like, what, six months we
4          filed this lawsuit?  Who knows
5          how many people have this
6          complaint.
7                    ATTORNEY GRIESER:
8                    Okay.  We will be moving
9          for a protective order.  I
10         believe that we already have
11         it.  Correct?
12                   ATTORNEY MANSOUR:
13                   A protective order as to
14         what?  Are you talking about
15         sealing what's in the
16         complaint?
17                   ATTORNEY GRIESER:
18                   Protecting what's in the
19         complaint, yeah.  And then I'm
20         going to seal it.
21                   ATTORNEY MANSOUR:
22                   A protective order is
23         about disclosure of documents
24         that we requested in discovery.
25         That's what we talked about.
```

38

1          You said ---.

2                    ATTORNEY GRIESER:

3                    And right now I'm moving

4          for protective order over the

5          depositions.  Right.  Rehashing

6          it.  Just because it's out

7          there doesn't mean that it can

8          be --- it necessarily has to be

9          repeated.

10                   ATTORNEY MANSOUR:

11                   Okay, are you telling me

12         that I cannot ask the witness

13         about allegations in the

14         complaint?

15                   ATTORNEY GRIESER:

16                   What I'm saying is that

17         you can ask the witness.  We're

18         going to move for a protective

19         order.

20                   ATTORNEY MANSOUR:

21                   Okay, that's fine.

22                   ATTORNEY GRIESER:

23                   You can answer,

24         Margaret.

25    BY ATTORNEY MANSOUR:

39

1    Q.    So are you done reading the
2    response?
3    A.    Yeah.
4    Q.    Okay.
5         And then just for your benefit,
6    too, we don't necessarily have to make
7    this an exhibit, but I'll show you.
8    This is the complaint that was filed
9    in the matter.  And if you could take
10   a look at paragraph 22 and also read
11   that to yourself and look up when
12   you're done.
13   A.    Okay.
14   Q.    Okay.
15        So, going back to P-2, the
16   response to interrogatory number nine,
17   can you tell me --- now this is my
18   client's response as to what he told
19   Attorney Zeiger in that telephone
20   conversation.
21                ATTORNEY GRIESER:
22                Just to be clear, I'm
23           objecting as to the fact that
24           this is privileged sensitive,
25           confidential information,

40

1      security sensitive.

2            ATTORNEY MANSOUR:

3            Okay.  Then let's get

4      the judge on the phone, because

5      especially ---

6            ATTORNEY GRIESER:

7            No, no, I'm just ---.

8            ATTORNEY MANSOUR:

9            --- if I'm coming here

10     and you're telling me that we

11     have an hour.

12            ATTORNEY GRIESER:

13            I want to just have it

14     on the record I've instructed

15     my client to answer.  Okay?

16            ATTORNEY MANSOUR:

17            Okay, but then you can't

18     claim it's privilege.  So if

19     you're going to tell her to

20     answer, then you're waiving the

21     privilege.  So you can't then

22     later on say, oh, no, it's

23     privilege, we can't talk about

24     it.

25            ATTORNEY GRIESER:

41

1          If I preserve my
2     objection, I can.
3               ATTORNEY MANSOUR:
4               No, you can't.  Not if
5     she's talking about it.  So, I
6     mean, if she's going to
7     voluntarily tell me about it,
8     then the privilege is waived.
9     So if you're claiming there's
10    privilege here, our best bet
11    would be to get the judge on
12    the phone and see what she
13    thinks.
14              ATTORNEY GRIESER:
15              Okay.
16              ATTORNEY MANSOUR:
17              Is that what we want to
18    do?
19              ATTORNEY GRIESER:
20              Yes.
21              ATTORNEY MANSOUR:
22              Okay.
23              Does that phone work?
24              ATTORNEY GRIESER:
25              I have no idea.

42

1          ATTORNEY BURNS:

2              Yes, it works.

3          COURT REPORTER:

4              Would you like to stay

5      on the record?

6          ATTORNEY MANSOUR:

7              Yes, please.

8          ATTORNEY GRIESER:

9              Is somebody calling you?

10     It says phone is registering.

11         ATTORNEY BURNS:

12             Oh, forget it then.

13         ATTORNEY MANSOUR:

14             I'll try to call her

15     from my phone.  It's fine, I'll

16     call chambers.

17             Yes, hi, this is

18     Attorney William Mansour.  I

19     have with me Attorney Grieser

20     and Attorney Burns.  We're

21     calling in regards to the Ara

22     Kimbrough versus Bucks County

23     matter.  We are here in the

24     deposition of one of the

25     witnesses, Margaret McKevitt,

43

1          who is a COO of the County.

2          And we have run into a bit of a

3          dispute regarding the scope of

4          my questioning and assertions

5          of privilege.  And we would, I

6          guess, like to know how we can

7          get this matter resolved by

8          Judge Marston.

9                   CHAMBERS:

10                  What's the Case Number?

11                  ATTORNEY MANSOUR:

12                  It is 24-4470

13                  CHAMBERS:

14                  2470?

15                  ATTORNEY MANSOUR:

16                  4470, 4470.

17                  CHAMBERS:

18                  Okay, one moment.  I'm

19         pulling up your docket now.

20                  Okay, let me put you on

21         hold for one moment.

22                  ATTORNEY MANSOUR:

23                  Sure, thank you.

24                      - - -

25     (WHEREUPON, A BRIEF PAUSE IN THE

44

1    RECORD WAS HELD.)

2                          - - -

3                    CHAMBERS:

4                    All right, this number,

5           8932, can I call you back in

6           about ten minutes?

7                    ATTORNEY MANSOUR:

8                    Sure.  Thank you.

9                    CHAMBERS:

10                   All right, give me ten

11          minutes.

12                   ATTORNEY MANSOUR:

13                   Okay, thank you.

14                   Do you want to take a

15          recess?

16                   ATTORNEY GRIESER:

17                   Yeah, why don't we go

18          off the record.

19                          - - -

20   (WHEREUPON, A SHORT BREAK IN THE

21   RECORD WAS HELD.)

22                          - - -

23                   ATTORNEY MANSOUR:

24                   Okay, Ms. McKevitt, so I

25          am showing you a document that

45

1          I've marked as P-3.  This is a
2          document that was disclosed to
3          us by the County in response to
4          our discovery requests.  Just
5          take a moment to look over that
6          and look up when you're done.
7                    ATTORNEY GRIESER:
8                    Just to be clear, it's
9          stamped --- Bates stamped --
10         1527.
11                         ---
12                    (Whereupon, Exhibit P-3,
13                    Response to Discovery
14                    Requests, was marked for
15                    identification.)
16                         ---
17    BY ATTORNEY MANSOUR:
18    Q.      You done?
19    A.      Yeah.
20    Q.      Okay.  Very good, thank you.
21            So this appears to be an email
22    that was sent from Lauren Smith to a
23    number of individuals on July 29th,
24    2024.  You appear to be one of the
25    individuals who received this email.

46

1          Do you recall receiving this
2     email?
3     A.     Yes.
4     Q.     Who is James Coyne?
5     A.     Deputy Corrections.  Deputy
6     Director of Corrections.
7     Q.     Was he, based on your
8     recollection, involved in the decision
9     to terminate Mr. Kimbrough?
10    A.     I do not remember.  But if he's
11    on here, then he obviously was made
12    aware of it.
13    Q.     Okay.
14           And how about Diane Otto?  Who
15    is she?
16    A.     She is an HR representative to
17    Corrections.
18    Q.     And Frank Albanese?
19    A.     He's Deputy Direct --- Deputy
20    Chief HR Officer.
21    Q.     Now, this email says, good
22    afternoon.  This morning, via Teams,
23    permission was granted to separate Ara
24    Kimbrough from employment.
25           My question from you is, who

47

```
 1    was permission granted by?
 2    A.    Me.  And we had a Teams
 3    meeting.  I'm assuming this was ---
 4    these were all the participants.  I
 5    don't know that for sure, but
 6    ultimately, yes.
 7    Q.    Did you --- hold on one second.
 8              ATTORNEY MANSOUR:
 9              Hello?
10              LAW CLERK:
11              Hey, good afternoon,
12         Counsel.  I'm a law clerk for
13         Judge Marston.  My name is
14         John.
15              ATTORNEY MANSOUR:
16              Hi, John.  How are you?
17              LAW CLERK:
18              I'm good.  Did you call
19         chambers?
20              ATTORNEY MANSOUR:
21              Yes, we did.
22              LAW CLERK:
23              Okay.
24              Could you please give me
25         an overview of what the issue
```

48

1          is right now?

2              ATTORNEY MANSOUR:

3              Sure.  So I am here

4      taking the deposition of

5      Margaret McKevitt, who is the

6      COO of the County.  And one of

7      the questions that I asked her

8      was --- so one of the issues in

9      this case is that my client was

10     discharged for sharing

11     allegedly confidential

12     information.  And I asked her

13     first initially what

14     information he shared that she

15     believed was confidential, and

16     counsel for the County objected

17     on the basis of privilege.

18             I then proceeded to show

19     the witness my own client's

20     response to an interrogatory.

21     The interrogatory asked for my

22     client to state with

23     specificity what information he

24     shared with Attorney Zeiger in

25     this case.  And then I

49

1 proceeded to ask her what part

2 of that information was

3 confidential, and then again,

4 received another objection

5 based on privilege.

6   And then I also

7 proceeded to ask her about an

8 allegation in the complaint,

9 which is essentially the same

10 as our response to the

11 interrogatory, the same

12 question, what information in

13 that allegation was

14 confidential and received the

15 same objection.  So it appears

16 that Counsel is not really

17 letting me inquire about that

18 topic.

19   LAW CLERK:

20   Okay.

21   Does --- is defense

22 counsel there?

23   ATTORNEY GRIESER:

24   I am.

25   ATTORNEY MANSOUR:

50

1              Yes.  And you're on

2         speakerphone, by the way.

3              LAW CLERK:

4              Okay, thank you.  All

5         right.

6              Defense Counsel, is that

7         generally your understanding of

8         what happened and your

9         objection?

10             ATTORNEY GRIESER:

11             In general, yes, it is.

12        I believe that Plaintiff's

13        counsel can get the same

14        information that he needs in

15        more general terms without

16        further disclosing what we

17        believe to be sensitive and

18        confidential information.

19             LAW CLERK:

20             Okay.  All right.  So

21        just --- sorry.  So the

22        assertion of privilege is that

23        the information itself is

24        privileged based on the fact

25        that you think it's

51

1          confidential and sensitive?
2                    ATTORNEY GRIESER:
3                    Yes.  The very specifics
4          of it are sensitive.  Names of
5          people, actual movements of
6          people, that sort of thing.
7                    LAW CLERK:
8                    Okay.  All right.
9                    I'll relay this to the
10         judge, and then we'll see if we
11         can set up a call in short
12         order here.
13                   ATTORNEY MANSOUR:
14                   Okay, thank you.
15                   LAW CLERK:
16                   All right, thank you,
17         Counsel.
18                   ATTORNEY MANSOUR:
19                   Okay, bye.
20    BY ATTORNEY MANSOUR:
21    Q.    Okay.  So going back to the
22    previous questions, so between
23    yourself, Mr. Kratz, Ms. Smith, Ms.
24    Randolph, those four individuals, was
25    there anybody who did not believe Mr.

52

1    Kimbrough should be terminated?

2    A.    I don't recall.

3    Q.    How did you personally first

4    learn about my client's telephone

5    conversation with Attorney Zeiger?

6                    ATTORNEY GRIESER:

7                    I'm sorry, can you

8            repeat the question?

9                    ATTORNEY MANSOUR:

10                   Sure.  How did Ms.

11           McKevitt first learn that my

12           client had a telephone

13           conversation with Mr. Zeiger

14           --- Attorney Zeiger.

15                   ATTORNEY GRIESER:

16                   If you can answer

17           without disclosing anything

18           privileged.

19                   THE WITNESS:

20                   Yeah, I don't know.  I

21           don't remember.  I don't

22           remember if it was our HR

23           director or our corrections

24           director.  I don't remember.

25    BY ATTORNEY MANSOUR:

53

1    Q.    Well, it's been alleged that

2    once my client had his conversation

3    with Attorney Zeiger, Attorney Zeiger

4    in the Joshua Patterson lawsuit,

5    immediately filed a motion to reopen

6    discovery.

7         Do you recall that?

8    A.    No.

9    Q.    In that motion, Attorney Zeiger

10   disclosed the fact that my client

11   contacted him the day before and

12   shared certain information.

13        Are you aware of that?

14   A.    No.  No, wait, repeat the

15   question.  I'm sorry.

16   Q.    Sure.

17   A.    Repeat the question.

18   Q.    So let me ask it this way.

19   When did you first --- when did you

20   first become aware that my client had

21   a telephone conversation with Attorney

22   Zeiger.

23   A.    You already asked that

24   question.

25   Q.    I said how, but when?

54

1    A.      How, but when?

2    Q.      No, I asked ---

3    A.      Okay, okay.

4    Q.      --- first how you did.

5    A.      Okay.

6    Q.      But now my question is, when

7    did you first learn?

8    A.      I don't know what date that

9    was.

10   Q.      Are you aware of the fact that

11   Attorney Daniel Grieser, Associate

12   Solicitor General, interviewed my

13   client regarding his conversation with

14   Attorney Zeiger?

15   A.      Yes.

16   Q.      On June 12th, 2024?

17   A.      I don't recall the date, but I

18   do know that he did interview him.

19   Q.      Are you aware of the substance

20   of that conversation between Attorney

21   Grieser and my client?

22                ATTORNEY GRIESER:

23                Just in general, not

24        what was actually said.

25                THE WITNESS:

55

1                    In general, yes, I --- I
2           couldn't repeat it verbatim,
3           but I do recall.
4    BY ATTORNEY MANSOUR:
5    Q.    Okay.
6    A.    That they had a conversation,
7    yes.
8                    ATTORNEY MANSOUR:
9                    Are you aware of the
10          fact that you disclosed to us
11          the full transcript of Mr.
12          Grieser's interview with my
13          client?
14                   ATTORNEY GRIESER:
15                   Unredacted?
16                   ATTORNEY MANSOUR:
17                   Unredacted.
18                   ATTORNEY GRIESER:
19                   No, I was not aware of
20          that.
21                   ATTORNEY MANSOUR:
22                   Okay, well, you did.
23          And since my client was there,
24          I'm not really sure why the
25          transcript will be privileged

56

1          or confidential in any way,

2          because my client could have

3          told me, too, everything that

4          you said.

5                    ATTORNEY GRIESER:

6                    I believe you're

7          referring to Lauren Smith's

8          notes.

9                    ATTORNEY MANSOUR:

10                   No, I'm referring to Mr.

11         Grieser.  Attorney Grieser.  We

12         can go off the record for a

13         second.  I'll look it up.

14                   - - -

15   (WHEREUPON, AN OFF RECORD DISCUSSION

16   WAS HELD.)

17                   - - -

18                   ATTORNEY MANSOUR:

19                   So we're adjourning the

20         - - - Ms. McKevitt's deposition

21         early.  We have a court

22         conference scheduled with Judge

23         Marston at 2:15 today to

24         discuss a number of issues that

25         have come up during this

57

1          deposition.  Ms. McKevitt's
2          deposition will be rescheduled.
3          And hopefully by that point,
4          we'll have some more
5          clarification about the topics
6          of inquiry.
7                But I would also just
8          like to note for the record
9          that I am not waiving my right
10         to ask questions that have been
11         previously objected to ---
12              ATTORNEY GRIESER:
13              Noted.
14              ATTORNEY MANSOUR:
15              --- or questions that we
16         have --- or topics of inquiry
17         that we've been discussing now
18         without questioning.
19              ATTORNEY GRIESER:
20              Thank you, Margie.
21              THE WITNESS:
22              Okay.  Thank you.  I
23         apologize.
24              ATTORNEY MANSOUR:
25              No, it's okay.

58

1          THE WITNESS:

2          Busy day.  Have a good

3     day.

4          ATTORNEY GRIESER:

5          Take care.

6          *  *  *  *  *  *  *  *

7     DEPOSITION CONCLUDED AT 1:50 P.M.

8          *  *  *  *  *  *  *  *

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

59

```
 1    COMMONWEALTH OF PENNSYLVANIA  )

 2    COUNTY OF PHILADELPHIA        )

 3                      CERTIFICATE

 4         I, Ethan Reese, a Notary Public in and

 5    for the Commonwealth of Pennsylvania, do hereby

 6    certify:

 7              That the witness, Margaret McKevitt,

 8    whose testimony appears in the foregoing

 9    deposition, was duly sworn by me on February 5,

10    2025 and that the transcribed deposition of said

11    witness is a true record of the testimony given by

12    said witness;

13              That the proceeding is herein recorded

14    fully and accurately;

15              That I am neither attorney nor counsel

16    for, nor related to any of the parties to the

17    action in which these depositions were taken, and

18    further that I am not a relative of any attorney

19    or counsel employed by the parties hereto, or

20    financially interested in this action.

21    Dated the 6th day of February, 2025

22

23

24

25                              Ethan Reese,

26                                 Court Reporter

27
```

Commonwealth of Pennsylvania - Notary Seal
Ethan Reese, Notary Public
Philadelphia County
My Commission Expires February 20, 2027
Commission Number 1432862